*E-Filed: April 2, 2015*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HASSAN ABPIKAR, | No. C14-04907 HRL |
| Plaintiff, | **ORDER GRANTING DEFENDANTS'** |
| v. | **MOTION TO DISMISS** |
| DAVID HARRIS; et al., | [Re: Docket No. 13] |
| Defendants. | |

Hassan Abpikar sues David Harris, Robert Durr, and Dwayne Sanchez for violation of the Fourth Amendment, false imprisonment, and related causes of action. Presently before the Court is Defendants' motion to dismiss the first amended complaint. All parties have expressly consented to having all matters proceed before a magistrate judge. A hearing was held on March 17, 2015. Based on the moving and responding papers, as well as the arguments presented at the hearing, the Court grants the motion to dismiss.

**BACKGROUND**

Plaintiff entered the United States with a F1 Student Visa in 1979. First Amend. Compl. ("FAC") ¶ 13. Plaintiff was convicted of telephoning a bomb threat in 1980, and of petty theft in 1999. Sanchez Decl. ¶¶ 7, 14.[1] In 2006, Plaintiff pled nolo contendere to petty theft. *Id*. ¶ 25.

---

[1] The Court may consider the Sanchez Declaration and its attachments without converting the present motion into a motion for summary judgment because: (1) the Court may consider documents supporting Defendants' jurisdictional arguments, *see St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); (2) the Court may consider documents referenced in Plaintiff's complaint, *see Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v.*

Defendant Dwayne Sanchez is a Special Agent with the U.S. Immigration and Customs Enforcement ("ICE"). Defendant David Harris is a Group Supervisor with ICE and was Sanchez's supervisor. The FAC alleges that Defendant Robert Durr is an FBI agent, FAC ¶ 9, but the Court is told that he is in fact a Lieutenant at the Santa Clara County Sheriff's Office, Mot. at 3 n.1. Plaintiff alleges that beginning in February 2006, Defendants began to engage in a conspiracy to frame Plaintiff as a terrorist and danger to the community that resulted in confining and detaining Plaintiff in federal custody for a period of over nineteen months. FAC ¶ 2. Defendants acted in retaliation for Plaintiff's refusal to become an informant. *Id*.

While Plaintiff was in custody, Sanchez issued a detainer on May 16, 2006. *Id.* ¶ 16; Sanchez Decl. ¶ 46, Attach. 16. On May 30, 2006, Defendants issued a Notice to Appear ("NTA"), which alleged that Plaintiff was deportable under Section 237 of the Immigration and Naturalization Act. Sanchez Decl. ¶ 22. The NTA listed the 1980 and 1999 convictions, as well as Plaintiff's nolo contendere plea, as the basis of deportability. *Id.*, Attach. 17.

In June 2008, Santa Clara Sheriff's Deputies arrested Plaintiff based on false charges. FAC ¶ 24. Plaintiff alleges that this arrest was made at the request of Defendants. *Id.*

On July 17, 2008, Harris and Sanchez questioned Plaintiff about his religious practices, his ex-wife, and his criminal record. *Id.* ¶ 27. Plaintiff alleges that Durr sent Sanchez and Harris. *Id.* ¶ 28.

On July 24, 2008, Sanchez issued another detainer. *Id*. ¶ 30; Sanchez Decl. ¶ 46, Attachs. 20. An NTA was issued on September 13, 2008, which was identical to the May 2006 NTA. FAC ¶ 33, Exh. A.

In January 2009, Santa Clara County correctional officers assaulted and battered Plaintiff. *Id.* ¶ 36. Plaintiff alleges that Defendants caused the correctional officers to assault and batter him. *Id.*

---

*Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); and (3) the Court may take judicial notice of court records as well as records and reports of administrative bodies, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

On November 4, 2011, Plaintiff filed suit against David Harris, Robert Carr (aka Robert Garr), and Dwayne Sanchez.[2] Plaintiff subsequently filed a FAC in which he substituted Robert Durr for Robert Carr. The FAC asserts: (1) violation of the Fourth Amendment; (2) false imprisonment; (3) assault and battery; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) negligence; and (7) conspiracy. Presently before the Court is Defendant's motion to dismiss the FAC.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

## DISCUSSION

**A.** ***BIVENS* CLAIM**

Plaintiff's first cause of action is a *Bivens*' claim for violation of the Fourth Amendment. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), created a remedy for violations of constitutional rights committed by federal officials acting in their

---

[2] In July 2012, Plaintiff, proceeding pro se, filed a civil rights action against Sanchez, Carr, Harris, Thomas Orecchia, and twelve unknown named agents of "Federal/DHS/ICE/Treasury." *Abpikar v. Sanchez*, No. C13-03982 RMW. Plaintiff alleged that the defendants wished to use him as an informant. According to Plaintiff, when the defendants became dissatisfied with the scope of information provided by Plaintiff and Plaintiff's unwillingness to become a permanent informant, they unlawfully searched Plaintiff's residences and seized gold jewelry from the residences. Plaintiff further alleged that the defendants acted in retaliation for Plaintiff's religious beliefs. *Id.*, Dkt. Nos. 1-2. In August 2014, the court dismissed Plaintiff's complaint as untimely. *Id.,* Dkt. No. 34. Plaintiff appealed the dismissal to the Ninth Circuit. *See Abpikar v. Sanchez*, No. 14-16735 (9th Cir. Sept. 11, 2014).

3

individual capacities. Defendants move to dismiss Plaintiff's first claim under Rule 12(b)(6) as barred by both qualified immunity and the applicable statute of limitations.

### 1. Statute of Limitations

First, Defendants argue that Plaintiff's *Bivens* claim is barred by the applicable statute of limitations. Although federal law determines when a *Bivens* claim accrues, the law of the forum state determines the statute of limitations for such a claim, as well as whether equitable tolling or equitable estoppel applies to toll the running of the statute of limitations. *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008). The applicable statute of limitations for a *Bivens* action is the forum state's statute of limitations for personal injury actions. *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991). In California, the applicable statute of limitations is two years. *See* Cal. Code Civ. Proc. § 335.1. Accordingly, Plaintiff had two years from the accrual of the *Bivens* claim to file this action.

The statute of limitations accrues "when the plaintiff knows or has reason to know of the injury." *W. Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000). "[A]s long as a plaintiff has notice of the wrongful conduct, it is not necessary that it have knowledge of all the details or all of the persons involved in order for the cause of action to accrue." *Id.* at 1157 (internal quotation marks and alterations omitted).

First, Plaintiff argues that "his cause of action accrued on November 5, 2013, at the time the Ninth Circuit held that Plaintiff's convictions were not categorically crimes involving moral turpitude. Thereby, giving Plaintiff 'reason to know' that Defendants wrongfully detained him under the pretense of Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act." Opp. at 9-10.

Defendants argue that Plaintiff's briefing from three cases filed between September 2008 and September 2009—*Abpikar v. Flores*, No. C08-04436 RMW (PR) (N.D. Cal. Sept. 23, 2008), *Abpikar v. Holder*, No. C09-01872 RMW (PR) (N.D. Cal. Apr. 29, 2009), and *Abpikar v. Obama*, No. C09-04356 RMW (PR) (N.D. Cal. Sept. 17, 2009)—demonstrate that Plaintiff was cognizant of his alleged injury and had an awareness of potential claims in or around September 2008. As a preliminary matter, the Court must determine whether it may consider Plaintiff's briefing in these

4

cases in ruling on the motion to dismiss. A district court generally may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Rule 12(b) provides that when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, there are some exceptions to this general rule. One exception is that the Court may take judicial notice of court documents, for purposes of noticing the existence of the action and the claims made therein. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) ("[T]he court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth of the matter asserted therein.").

In *Flores*, *Holder*, and *Obama*, Plaintiff attacked the legality of the detainers that are the subject of this action. First, in *Flores*, Plaintiff argued for his release from custody, asserting that "Mr. Dwayne Sanchez is abusing his vast power of INS invested in him." Scharf Suppl. Decl., Exh. A, at 9. In addition, Plaintiff challenged his June 24, 2008 detention on the basis that it was a constitutional violation, "false imprisonment," and the result of "substantial misconduct" by Sanchez, Harris, and "Carr." *Id.*, Exh. E, at 12. Second, in *Holder*, Plaintiff named Harris in a "Criminal Complaint for Illegal Confinement in Violations of 5th, 6th, 8th, and 14th Amendment[s] and the U.S. Constitution and in Violation of 18 U.S.C. § 1621, 1623." *Id.*, Exh. B. Third, in *Obama*, Plaintiff names Sanchez, Harris, and "Carr" as respondents in his "Motion for Release Due to Illegal and Unconstitutional Detention and Due Process Violation of 4th, 5th, 6th, 8th, and 14th Amendments to U.S. Constitution and Deteriating [sic] Health Due to Inmate's Attack, Resulting in Head Injury, and 28 U.S.C. § 1331." *Id.*, Exh. C. In that motion, Plaintiff alleges that Defendants presented a false affidavit and evidence to obtain and secure an invalid indictment dated August 20, 2008, and by filing a false NTA dated September 13, 2008. *Id.* at 2. Plaintiff also alleges that he was victimized twice—on January 15, 2009 due to excess force and on June 28, 2009 due to an inmate attack. *Id.* at 3.

1    In addition, Plaintiff's briefing in the administrative proceedings and before the Ninth Circuit in *Abpikar v. Holder*, 544 Fed. App'x 719 (2013), reinforces the conclusion that he knew of his injury stemming from the allegedly unlawful detainers before November 2009. Scharf Suppl. Decl., Exhs. D, E. In this appeal, Plaintiff asserted that the 1980 conviction for telephoning a bomb threat was not a crime involving moral turpitude, challenging the validity of the prior detentions.

    The Court finds that before Plaintiff was released from custody on bond in November 2009, he had formed the belief that the detentions were unlawful. Thus, the *Bivens* claim filed in November 2014 accrued more than five years earlier, prior to November 2009. It is barred by the two-year statute of limitations.

    Second, Plaintiff argues that he remained in the custody of Defendants until June 27, 2013 by way of house arrest and electronic monitoring. According to Plaintiff, he was imprisoned such that his access to the courts was so significantly impaired that it should constitute a disability for statutory tolling purposes.

    "If a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years." Cal. Code Civ. Proc. § 352.1(a). "[A]ctual, uninterrupted incarceration is the touchstone for assessing tolling under § 352(a)(3), which covers all post-arrest custody." *Elliott v. City of Union City*, 25 F.3d 800, 803 (9th Cir. 1994) (internal quotation marks omitted).

    Here, Plaintiff was not in uninterrupted incarceration from the time the statute of limitations began to run and when he was statutorily required to file his complaint. Plaintiff was released from custody on November 6, 2009. FAC ¶ 42. Plaintiff has not shown that his house arrest amounted to imprisonment. Although California courts have not addressed the issue of whether house arrest amounts to "imprisonment" under Section 352.1, the California Court of Appeal has held that an adult parolee is not entitled to tolling because parolee status "neither precluded nor significantly impaired [a plaintiff's] ability" to assert his claim while on parole. *Deutch v. Hoffman*, 165 Cal. App. 3d 152, 156, (Ct. App. 1985). The Court finds that any disability tolling under Section

6

1    352.1(a) terminated on November 6, 2009, at which point the two-year statutory clock for a *Bivens*
2    claim began to run.

3    Third, Plaintiff argues that his subsequent 36-month incarceration restarted tolling of the
4    applicable statute of limitations. However, disability of imprisonment ceases when a plaintiff is
5    released from custody on bail, and "[a]ny subsequent reincarceration d[oes] not cause the limitations
6    period to be tolled again." *Coronado v. Gilbertson*, No. C 01-3602 TEH (PR), 2002 WL 1483843,
7    at *2 (N.D. Cal. July 5, 2002). In addition, the tolling period starts as of the date of accrual, and
8    proceeds for a maximum of two years, as explained above.

9    Accordingly, Plaintiff's *Bivens* claim is barred by the applicable statute of limitations.

### 2. Qualified Immunity

Defendants argue that Plaintiff's claim is barred by qualified immunity. Qualified immunity shields government officials from civil suit in the performance of discretionary governmental functions, if their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "gives government officials breathing room to make reasonable but mistaken judgment," and "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012).

The determination of whether a defendant's actions are shielded by qualified immunity traditionally requires the two-step inquiry mandated in *Saucier v. Katz*, 533 U.S. 194 (2001). Under this two-step inquiry, a court first determines whether the alleged facts show that the defendant's conduct violated a statutory or constitutional right, and second, whether that right was clearly established at the time of the conduct. *Id.* at 200. However, the *Saucier* sequence is not mandatory and lower courts now have the discretion to decide the questions according to the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

#### a. *Defendants Sanchez and Harris*

Defendants argue that Sanchez had the statutory authority to arrest and detain Plaintiff. *See* 8 U.S.C. § 1357(a)(2) (an ICE agent may arrest "any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or

7

regulation"); 8 U.S.C. §§ 1226(c), 1231(a) (mandating detention for criminal aliens both during removal proceedings and after entry of a removal order). In addition, Defendants argue that Sanchez had probable cause to issue the detainers because Plaintiff had multiple convictions for crimes involving moral turpitude. *See* INA § 237(a)(2)(A)(ii).

First, Plaintiff argues that the detainers issued in 2006 and 2008 were unlawful because Plaintiff's 1980 conviction for telephoning a bomb threat was not a crime involving moral turpitude. In support of this argument, Plaintiff cites *Abpikar v. Holder*, 544 Fed. App'x 719 (2013). In *Abpikar*, the Ninth Circuit articulated the legal standard for determining whether a particular crime involves moral turpitude, and remanded the case for determination of whether telephoning a bomb threat is a crime involving moral turpitude. The Ninth Circuit did not hold that telephoning a bomb threat was not a crime involving moral turpitude as a matter of law. This decision was issued in 2013.

Sanchez issued the detainers in 2006 and 2008, before the Ninth Circuit issued its decision in *Abpikar*. Plaintiff has not identified any facts that show that Sanchez violated clearly established law that existed at the time the subject detainers were issued. Plaintiff has not identified any facts or case law that show that it was unreasonable for Sanchez to believe that telephoning a bomb threat involved moral turpitude.

Second, Plaintiff argues that Defendants caused Santa Clara County Sheriff's Deputies to arrest him in June 2008, and caused Santa Clara County correctional officers to attack him in January 2009. Plaintiff does not allege any facts in support of these conclusory allegations. Such conclusory allegations of a conspiracy are insufficient to support a *Bivens* claim against Defendants.

Third, Plaintiff argues in his opposition that the detainers were procedurally defective because Defendants did not issue a NTA within 72 hours of their issuance. At the hearing, however, Plaintiff stated that the Court may "disregard" this argument. Accordingly, the Court declines to consider Plaintiff's argument regarding the issuance of the NTAs.

### b. *Defendant Durr*

In regards to Durr, Plaintiff alleges that Durr visited Plaintiff while he was in prison to discuss terrorist activities and the possibility of Plaintiff becoming an informant. Plaintiff further

8

alleges that Durr sent Harris and Sanchez to visit him in prison and question him about his ex-wife and criminal record.  *See* FAC ¶¶ 26-28; Opp. at 3.

Plaintiff alleges no facts specific to Durr that could support a violation of a constitutional right.  Plaintiff does not claim that he refused to meet with Durr, or that Durr exerted any pressure or coercion to communicate with Plaintiff.  In addition, Plaintiff does not allege that Durr interviewed him about past or pending criminal charges. There is no constitutional right to be free from visits by law enforcement on matters unrelated to pending charges, or to be free from voluntary discussions with law enforcement. Accordingly, Plaintiff's *Bivens* claim is barred by qualified immunity.

Because Plaintiff's *Bivens* claim is barred by both the applicable statute of limitations and by qualified immunity, it is dismissed without leave to amend.

### B.   TORT CLAIMS

Defendants move to dismiss Plaintiff's second, third, fourth, fifth, sixth, and seventh claims.  At the hearing, Plaintiff withdrew his tort claims.  Accordingly, the second, third, fourth, fifth, sixth, and seventh claims are dismissed.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the FAC is granted.

**IT IS SO ORDERED.**

Dated:  April 2, 2015

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C14-04907 HRL Notice will be electronically mailed to:**

Angelica Maria Ayar     angie.ayar@gmail.com

James A. Scharf     james.scharf@usdoj.gov, mimi.lam@usdoj.gov

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**